**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Brandon Wright, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 2:16-cv-420 |
| Premier Courier, Inc., *et al.*, | Judge Michael H. Watson |
| Defendants. | Magistrate Judge Jolson |

---

| | |
|---|---|
| Brian Lumley, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 2:17-cv-654 |
| Premier Courier, Inc., *et al.*, | Judge Michael H. Watson |
| Defendants. | Magistrate Judge Jolson |

## OPINION AND ORDER

Plaintiffs Brandon Wright ("Wright") and Brian Lumley ("Lumley," collectively "Plaintiffs"), individually and on behalf of similarly situated individuals, and Defendants Premier Courier, Inc. and Ronald T. Dillard (collectively "Defendants") move the Court for final approval of the proposed class and collective action settlement described in the parties' Settlement and Release Agreement ("Settlement" or "Agreement") and enter final judgment in this action. ECF No. 75. Notice was given to members of the Settlement Class, and a Fairness Hearing was held on June 26, 2018. Based on Plaintiffs' motion for final approval and the

evidence presented at the fairness hearing, the Court **GRANTS** final approval of the Settlement and enters final judgment.

## I. BACKGROUND

### A. Procedural History

Plaintiff Wright filed a class and collective action complaint ("Action") against Defendant, ECF No. 1, on May 11, 2016, an amended complaint, ECF No. 26, on March 21, 2017, and a second amended complaint, ECF No. 44, on May 18, 2017. Plaintiff Lumley joined this Action by filing a Consent Form, ECF No. 42, on May 17, 2017. Plaintiffs alleged that they and other drivers should have been paid as hourly employees by Premier and are owed overtime compensation as well as minimum wages. Defendants deny Plaintiffs' claims and asserted affirmative defenses. *See* Answer to Amended Complaint, ECF No. 14.

A related case, filed by Lumley on July 27, 2017, alleged that Defendants had transferred assets in violation of the Ohio Fraudulent Transfer Act, Ohio Rev. Code Ann. §§ 1336.01, et seq. *See Brian Lumley v. Ronald T. Dillard, et al.*, Case No. 2:17-cv-00654 ("the *Lumley* case"). Defendants deny those allegations as well.

On July 10, 2017, Plaintiffs filed a motion for conditional and class certification, ECF No. 29, seeking conditional certification of Fair Labor Standards

Act ("FLSA") claims pursuant to 29 U.S.C. § 216(b) and class certification of state-law claims under Federal Rule of Civil Procedure 23.   The  motion was opposed by Defendants and extensively briefed by the parties.

Negotiations leading to the proposed settlement were protracted and difficult.   A mediation with Stephen A. Watring on February 10, 2017, was unsuccessful.   Subsequently the Parties exchanged settlement proposals to narrow their  positions, and that effort resulted in a second mediation with the assistance of the  Court.   After additional and prolonged negotiations, this Settlement was achieved.

### B. Preliminary Approval

On October 31, 2017, the parties filed their joint motion for settlement approval, ECF No. 71.   On January 8, 2018, the Court found that the proposed settlement satisfied the standard for approval of a FLSA collective action under 29 U.S.C. § 216(b).   Prelim. Approval Order, ECF No. 72.

The Court also certified the class, concluding that the proposed Class Members satisfy "the four prerequisites of Rule 23(a)"—numerosity, commonality, typicality, and adequate representation—and "meet at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).   The Court found

that the settlement class ("Settlement Class" or "Class Members") consists of the following:

> [A]ll persons who performed services under an Independent Contractor Agreement with Premier Courier, Inc. at any point from August 8, 2013 to the Preliminary Approval Date."

Prelim. Approval Order ¶ 11, ECF No. 72.

### C. The Settlement Agreement

The Settlement resolves three types of disputed claims between the parties. First, the Settlement resolves FLSA claims of the named Plaintiffs and similarly-situated employees who opted into the case pursuant to 29 U.S.C. § 216(b). Second, the Settlement resolves state-law wage-and-hour claims of the named Plaintiffs and all members of the proposed Settlement Class pursuant to Federal Rule of Civil Procedure 23(e). Third, the Settlement resolves other claims of Plaintiffs and the Settlement Class including those arising under the Ohio Fraudulent Transfer Act, Ohio Rev. Code Ann. §§ 1336.01, et seq., which were asserted in the separate *Lumley* case.

The Settlement total is $600,000, before attorney fees and costs. The settlement makes individual settlement payments available to the Plaintiffs, Opt-Ins, and Settlement Class Members representing a substantial percentage of their claimed damages. The parties' proposed method of allocating the net settlement amount is to award one-half to the Plaintiffs and Opt-Ins and one-half to

Settlement Class Members, then distributing those sums based on the participants' respective weeks of service to Defendant Premier Courier during the relevant timeframe.

**D. Notice**

Plaintiffs retained Dahl Administration, LLC ("Dahl"), to be the Settlement Administrator. Dahl was responsible for providing Notice to Class Members and potential Opt-in Plaintiffs. *See* Kratz Decl. ¶¶ 1–3, ECF No. 75-2. Notice was given to Potential Opt-Ins, defined as "all persons who performed services under an Independent Contractor Agreement with Premier Courier, Inc. at any point from August 8, 2013 to the Preliminary Approval Date," and all members of the Settlement Class, defined as "all persons who performed services under an Independent Contractor Agreement with Premier Courier, Inc. at any point from August 8, 2013 to the Preliminary Approval Date." *Id.*

Plaintiffs' counsel filed the declaration of Dahl's Settlement Administrator, Kelly Kratz, verifying that the Notice was distributed to 653 Class Members and Potential Opt-in Plaintiffs by first-class United States mail at their last-known addresses as shown in Defendants' records. *See* Kratz Decl. ¶ 6, ECF No. 75-2. Seventy-five packets were returned as undeliverable, updated addresses were received for those individuals whose Notices were returned, and fifty-two

Notices were re-sent. *Id.* at ¶ 7.

The Notice described the proposed settlement, including the request for attorney's fees and expenses. *See* Ex. A to Kratz Decl., ECF No. 75-2. The Notice also provided the time and location of the Settlement Hearing and explained the procedures for objecting to the proposed settlement and request for attorney's fees. *Id*. The Notice specifically advised that the deadline for objecting was June 4, 2018. *Id*. As of June 13, 2018, the Settlement Administrator averred that Dahl had not received any requests for exclusion from the Settlement Class or any objections from the Class Members. *Id* at ¶¶ 9–10.

## II. APPROVAL OF THE PROPOSED CLASS SETTLEMENT

In deciding whether to approve the proposed settlement, the Court must consider whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). As to the Opt-Ins, the Court must also find that the proposed Settlement satisfies the standard for approval of an FLSA collective action settlement under 29 U.S.C. § 216(b); *see also Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012) (requiring a finding that there is "a bona fide dispute between the parties as to the  employer's liability under the FLSA" and that the settlement "is fair, reasonable, and adequate.")

In making this determination, the Court considers the following factors:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011) (citations and internal quotation marks omitted). The Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992). Because the Court applies similar factors to evaluate the settlement of a FLSA action, the Court will address the factors below for all claims and Plaintiffs. *See, e.g., Clevenger v. JMC Mech., Inc.*, No. 2:15-cv-2639, 2015 WL 12681645, at *1 (S.D. Ohio Sept. 25, 2015) (applying five of the factors outlined above when approving an FLSA action).

For the reasons that follow, the Court concludes that the Settlement is fair, adequate, and reasonable.

## A. The Risk of Fraud or Collusion

First, the Court finds that there is no evidence—or even a suggestion—that the settlement was the product of fraud or collusion, as testified to during the hearing. *See IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is

evidence to the contrary."). Rather, the settlement is the result of arm's-length, well-researched, and protracted negotiations. The Court concludes that this factor favors approval of the Settlement.

## B. Complexity, Expense, and Likely Duration of the Litigation

Generally, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D. N.Y. 2000)). Here, the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process provide justifications for the Court's approval of the proposed Settlement.

The Parties have been litigating in this Court for at least two years. Plaintiffs' counsel explained at the hearing that continuing litigation would have resulted in additional time and effort spent preparing for litigation, including additional depositions, record review, expert depositions, and trial preparation. Settling the case now will result in the saving of time and money to the Parties and the Court.

If this matter is not settled at this time, there would, inevitably, be additional discovery. There would also likely be summary judgment motions, pre-trial

motions, case management conferences and hearings, and trial preparation, which would result in the expenditure of many additional hours of effort.

Furthermore, the additional delay due to post-trial motions and the appellate process could prolong an already protracted litigation.

Accordingly, this factor weighs in favor of approving the Settlement. It secures a substantial benefit for the Class Members, undiminished by further expenses and without the delay, cost, and uncertainty of protracted litigation.

## C. The Amount of Discovery Engaged in By the Parties

To confirm that Named Plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.*

In this case, the Parties engaged in extensive informal discovery. Plaintiffs conducted extensive investigations into the facts before and during the prosecution of this case. These investigations included multiple meetings and conferences with the Plaintiffs, analysis of documents produced by Plaintiffs and Defendants, analysis of Defendants' legal positions, investigation into the viability of class and collective action treatment, analysis of potential class-wide damages, and deposing Defendants' principal representative. In short, this record demonstrates that both parties have been afforded an adequate opportunity to conduct sufficient discovery to be fully appraised of the legal and factual issues presented as well as the strengths and weaknesses of their cases. Both sides made well-informed decisions to enter into the Settlement. This factor weighs in favor of approving the proposed Settlement.

## D. The Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

Here, Plaintiffs allege that they and other drivers should have been paid as hourly employees instead of independent contractors, and thus are owed

overtime compensation as well as minimum wages. Lumley also alleges that Defendants transferred assets in violation of the Ohio Fraudulent Transfer Act. Defendants categorically deny Plaintiffs' claims. Plaintiffs' counsel aver that litigating FLSA claims involve risk and uncertainty because they require Plaintiffs to establish both Defendants' liability and each Class Members' damage. Mot. for Prel. Approval 9, ECF No. 71. In contrast, the settlement ensures that Plaintiffs will receive some compensation.

Accordingly, due to the existence of uncertainties inherent in their claims, Plaintiffs' likelihood of success on the merits remains uncertain. This factor therefore weighs in favor of approving the Proposed Settlement.

### E. The Opinions of Class Counsel and Class Representatives

The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference. *See, e.g.*, *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs . . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."). *See also Kritzer*, 2012 WL 1945144, at *7 ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

In this case, Class Counsel have extensive experience in class action litigation and corporate matters. *See* Downie Decl. ¶¶ 1–5, ECF No. 76-5; Winters Decl. ¶¶ 1–5, ECF No. 76-1. After significant informal discovery and protracted arm's-length negotiations, the Parties reached a settlement in principle. Equipped with extensive experience, Class Counsel have concluded that this settlement is not only fair and reasonable but also a good result and confers substantial benefits on the Settlement Class. Named Plaintiffs also approve of the settlement, as indicated by Wright at the hearing. The Court therefore finds that this factor favors approval of the proposed Settlement.

## F. The Reaction of Absent Class Members

The Court must also consider the reaction of the absent class members. *Poplar Creek*, 636 F.3d at 244; *In re Broadwing*, 252 F.R.D. at 376.

Here, individual notices were sent by first class mail to the 653 Class Members. Krantz Decl. ¶ 6, ECF No. 75-2. Seventy-five Notice Packets were returned as undeliverable and sent to a professional address search firm, which provided updated addresses for fifty-two of the seventy-five Class Members. *Id.* at ¶7. Despite such notice, no objections were filed or requests for exclusion submitted, and no Class Members appeared at the fairness hearing, which creates the inference that all or most of the Class Members had no concerns about the proposed settlement. This positive response from the Settlement

Class weighs in favor of approving the settlement. *See, e.g., In re Broadwing*, 252 F.R.D. at 376.

### G. The Public Interest

"Public policy generally favors settlement of class action lawsuits." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D.Ohio 2007) (citations omitted). In this case, the Settlement confers immediate benefits on the Settlement Class, avoids the risks and expense in further litigation, and conserves judicial resources. The Court therefore finds that this factor favors approving the settlement.

In sum, after considering all of the relevant factors, the Court concludes that the Settlement provides a substantial benefit to the parties and is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

## IV. ATTORNEY'S FEES AND COSTS

### A. Attorney's Fees

Plaintiffs' counsel seeks an award of one-third of the total settlement amount. Defendants have not opposed this request for fees nor have any Class Members.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Rule 23 authorizes a court to "award reasonable attorney's fees

and non-taxable costs that are authorized by law or by the parties' agreement."
*See* Fed. R. Civ. P. 23(h). Named Plaintiffs' successful pursuit of this action can
also support an award of reasonable attorney's fees. *See Ramey v. Cincinnati
Enquirer, Inc.*, 508 F.2d 1188, 1194 (6th Cir. 1974) (citing *Mills v. Electric Auto–
Lite Co.*, 396 U.S. 375 (1970)).

District courts apply a two-part analysis to assess the reasonableness of
an attorney fee petition. *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp.
2d 752, 760 (S.D. Ohio Dec. 31, 2007). First, the Court must determine the
appropriate method to calculate the fees, using either the percentage of fund or
the Lodestar approach. *Id.* Whichever method is utilized, the United States
Court of Appeals for the Sixth Circuit requires "only that awards of attorney's fees
by federal courts in common fund cases be reasonable under the
circumstances." *Rawlings*, 9 F.3d. at 516. Second, the Court must consider six
factors to assess the reasonableness of the fee. *See Moulton v. U.S. Steel Corp.*,
581 F.3d 344, 352 (6th Cir. 2009).

Here, the Court is applying the percentage of the fund method. *See, e.g.,
Gascho v. Global Health Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir.
2016) (indicating that the district court must make a "clear statement" as to which
calculation method is being applied); *see also Kimber Baldwin Designs, LLC v.
Silv Commc'n, Inc.*, No. 1:16-cv-448, 2017 U.S. Dist. LEXIS 186830, at *14 (S.D.

Ohio Nov. 13, 2017) (Black, J.) ("In the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." (internal citations and quotations omitted)). Accordingly, the Court will consider the following factors in determining whether the fee request is reasonable under the circumstances:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Moulton*, 581 F.3d at 352.

Under the circumstances of this specific case, particularly where neither Defendants nor Plaintiffs have opposed the fee request and the Class has received a "substantial benefit," the Court concludes that all of these factors weigh in favor of approving an award of attorney's fees.

As to the first factor, the Court has already described at length above the benefit conferred to the Class Members through Settlement. This factor therefore weighs in favor of approving the requested award.

Second, the value of the services on an hourly basis, multiplied by the hourly rate, favors the proposed fee award. Here, although not required, a cross-check using Class Counsel's Lodestar amount weighs in favor of granting the requested fee award of $200,000. As Class Counsel represent in their

supplemental memorandum and accompanying affidavits, their Lodestar "equals or exceeds the requested one-third percentage even without a multiplier," for a nonduplicative total Lodestar amount of $189,842. Supp. Mem. 7, ECF No. 76. Specifically, Attorney Winters and his firm calculate their lodestar amount to be approximately $87,922. Winters Supp. Decl. ¶¶ 15–20, ECF No. 76-2 (averring that Attorney Joseph Scott worked 105.3 hours at an hourly rate of $350; Attorney Winters worked 151.7 hours at an hourly rate of $300; and Attorney McDermott II worked 24.7 hours at an hourly rate of $225 per hour). Attorney Downie represents that his Lodestar amount would be $101,920. Downie Supp. Decl. ¶¶ 15–19, ECF No.76-5 (averring that he worked 291.2 non-duplicative hours at an hourly rate of $350). *See also* Billing Records, ECF Nos. 28-1, 28-2, 28-3, & 28-4. The Court finds that Class Counsel's hourly rates are reasonable under the circumstances of this particular case as the percentage fund amount requested is close to the Lodestar calculation, even without the application of a multiplier.

Third, Class Counsel represents that they took on this case pursuant to a contingency fee agreement. In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. *See* Supp. Mem. 6–7, ECF No. 76. This factor weighs in favor of approving the requested fee award. *See, e.g., In re*

*Sulzer Hip Prosthesis and Knee Prosthesis Liability Litig.*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003) ("Absent this class action, most individual claimants would lack the resources to litigate a case of this magnitude.").

The Court next considers whether the fourth factor, society's stake in rewarding attorneys who produce such benefits, militates in favor of an award of the requested attorney's fees. Class actions such as this "have a value to society more broadly, both as deterrents to unlawful behavior–particularly when the individual injuries are too small to justify the time and expense of litigation– and as private law enforcement regimes that free public sector resources." *Gascho*, 822 F.3d at 287. Without a class action, the individual plaintiffs would not have had a strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their cases.

The remaining two factors, the complexity of the litigation and the professional skill and standing of the attorneys involved, also militate in favor of granting the requested award. This is a complex case with nuanced issues regarding wage and hour determinations of couriers. The first lawsuit also necessitated the filing of second lawsuit, the *Lumley* case, which involved issues of fraudulent transfer.

Class Counsel have extensive experience in class action litigation similar to this action. *See* Winters Decl., ECF No. 76-1; Winters Supp. Decl., ECF No.

76-2; Downie Decl. ECF No. 76-5; Downie Supp. Decl., ECF No. 76-6. As discussed above, the hours expended and time records submitted by Class Counsel further underscore their competency and efficient handling of this matter, favoring approval. *See id.* For all of these reasons, the Court concludes that these factors favor approval of the fee award of $200,000 to Class Counsel.

## B. Settlement Administration Costs and Out-of-Pocket Expenses

Class Counsel avers that out-of-pocket expenses currently amount to $12,343, which include costs expended for the 30(b)(6) deposition of Defendant, expert witness fees paid, transcripts for the 30(b)(6) deposition, Defendants' deposition of plaintiffs, travel, and the costs of mediation. Winters Supp. Decl. ¶¶ 21–22, ECF No. 76-2; *see also* Downie Supp. Decl. ¶¶ 20–21, ECF No. 76-6. The Court finds that all of these costs are reasonable and necessary to litigate and settle this case and therefore approves the request of $12,343 for out-of-pocket expenses. *Cf. Feiertag v. DDP Holdings, LLC*, No. 14-cv-2643, 2016 WL 4721208, at *8 (S.D. Ohio Sept. 9, 2016).

## C. Class Representative Awards

Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (reviewing such awards under an abuse of discretion standard). Notably, "courts routinely

approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08–cv–1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted).

Here, the Settlement Agreement proposes to award $5,000 each, to Named Plaintiffs Wright and Lumley for their efforts in bringing and pursuing this action, and in consideration of their general release. *See* Winters Decl. ¶ 17, ECF No. 76-1. As Winters explains, their awards are well-earned because they provided important documents and information through the litigation, which were instrumental in achieving a settlement. *Id.* In light of this service, the Court approves the service award in the amount of $5,000, to Wright and $5,000 to Lumley.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the joint motion for final settlement approval and attorney's fees, ECF No. 75, and **ORDERS** the following:

1. The Court finds that the proposed settlement of Settlement Class members' claims is "fair, reasonable, and adequate" to all participants and qualifies for approval pursuant to Rule 23(e).

2. The Court approves the Settlement and orders that it be implemented according to its terms and conditions and this Order.

3. The Court finds that the Total Settlement Amount of **$600,000**, as well as the proposed allocations listed in the Table of Individual Payments, are fair and reasonable. The Court approves the Table of Individual Payments and orders that such payments be distributed in the manner, and subject to the terms and conditions, set forth in the Settlement Agreement.

4. The Court approves the proposed service awards to Wright and Lumley, in the amount of **$5,000** each, and orders that such payments be made in the manner, and subject to the terms and conditions, set forth in the Settlement Agreement.

5. The Court finds that awarding counsel one-third of the settlement award in this case ensures "that counsel is fairly compensated for the amount of work done as well as for the results achieved." *See Rawlings*, 9 F.3d at 316. The Court therefore approves the payment to Plaintiffs' counsel of attorney's fees in the amount of **$200,000**, expense reimbursements in the amount of **$12,343**, and costs of administration in the amount of **$10,508**, as provided in the Settlement Agreement and Supplemental Memorandum. Such payments shall be made in the manner,

and subject to the terms and conditions, set forth in the Settlement Agreement.

6. The Court **DISMISSES** these cases **WITH PREJUDICE** and **DIRECTS** the Clerk to enter this Final Order and Judgment.

7. The Court retains jurisdiction over the two actions to enforce the terms of the Settlement Agreement and resolve any and all disputes thereunder.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**